16-0709, people of the state of Illinois, Plainton, Appalachia. The member of the jury, Yanez, has been acquitted. Arguing on behalf of the defendant's partner, Mr. James K. Levin. Arguing on behalf of the Plainton, Appalachia, Mr. Stephen A. Bryant. Good morning, gentlemen. Mr. Levin? Levin.  If you're ready, you may proceed. Thank you, Your Honor. Good morning again, Your Honor. My name is James Levin. On behalf of the defendant, Mr. Yanez, may it please the court. There are three issues that I've raised in this case, and I intend to address them in chronological order. They're basic variations on the same theme here. That the jury did not receive an instruction on the self-defense element for the offense of unlawful restraint. Therefore, there's reversible error under all three issues. The first issue is plain error. The second issue is ineffective assistance of counsel. And the third issue is the state should have, on its own, submitted the instruction to the jury. After all, they had drafted an instruction for that very purpose, but decided to tender a different instruction. The state or the trial court? I'm asking, I think all three players are responsible, the trial court, the defense counsel, and the state's attorney. Mr. Levin, how is your client prejudiced by not giving this instruction for the unlawful restraint if it was given for the other charges, the aggravated domestic battery and the domestic battery, and the unlawful restraint instruction contained the language without legal justification? Aren't they substantially equivalent? And so, how is their prejudice? Your Honor, the state will have to, I will argue a point too, but I don't think there's any serious dispute that the trial court did not follow the IPI. The IPI says that the not justified in using force instruction should have been used. Rule 451A in particular requires that the appropriate IPI instruction should be given. And Rule 451A was not followed. And the only Supreme Court said on numerous occasions that their rules, the Supreme Court rules, are not just aspirations, but they're mandatory. The courts and the parties are required to follow those instructions. Well, if there wasn't a serious risk that he was incorrectly convicted, why would it matter then, again, because the other language without legal justification was in there? Well, I'd like to go to issue two, the ineffective assistance of counsel, for example. Under the Strickland standard, it's a reasonable probability that the result could have been different. And the standard of proof is actually lower than the preponderance of the evidence. I mean, in a criminal case, we have beyond a reasonable doubt, we have clear and convincing, we have preponderance of the evidence. The Strickland burden of proof is lower than the preponderance of the evidence standard, so there is a reasonable probability of prejudice here. The one problem was, was that the not justified in using force instruction appeared for all the issue instructions for the other offenses. And this issue is explored in the People v. Getter case, but the only offense where the not justified in using force, the IPIA instruction, the only offense where it wasn't used was the unlawful restraint. And so the standard in ineffective assistance of counsel and plain error is not that you have to prove it with absolute certainty. The Illinois Supreme Court for the first issue, plain error, said there's a serious risk that the jury may misunderstand the instructions. So when the instruction appears in all the offenses but unlawful restraint, there is a serious risk of error there. Well, if the instructions were only given in a vacuum and there were no other comments or arguments by counsel, that's more likely. But in this case, defense counsel in argument argued that this was a self-defense case, not once but several times. Absolutely. And so how does that impact that unlawful restraint language? Well, the first statement that the defense counsel made in closing argument was Mr. Yonitz was justified in using force to restrain the complainant. That was the first statement. So when defense counsel makes arguments, makes statements in opening statement, makes arguments in closing argument, presents Mr. Yonitz as a witness, and basically admits the offense except raises an affirmative defense, then that's very prejudicial to make arguments and present evidence but not have an instruction for the jury to acquit the defendant. The jury acquitted Mr. Yonitz on aggravated domestic battery, for example, and had the instruction, the instruction was there for the jury to have that option. So when the defense counsel presents evidence and presents argument, but the jury is not left with the option of acquitting the defendant, that's extremely prejudicial. Well, how were they left with the option of not acquitting when it said, when it had the justifiable force, or when it had some indication of self-defense but not self-defense per se? There was argument, there was evidence, the other instructions included that, and so how would they miss it in the unlawful restraint? Well, because a rational jury could possibly, again, the standard is a reasonable probability, or a serious risk of error. We don't have, I don't have to prove, the defendant does not have to prove beyond the shadow of a doubt. But there is a serious risk of error here, because if you see the not justified use of force in all the offenses, and he's actually acquitted of several of the offenses, but it doesn't appear in the unlawful restraint, then there is a serious risk of error there. And in fact, the jury did not even return verdicts on all the charges initially, except unlawful restraint. You said they did return them on all but the lawful restraint? Yes, the judge had to send the jury back out again to deliberate on the unlawful restraint. There was, they didn't immediately convict Mr. Young as an unlawful restraint. They, the jury had to go back and do some further deliberation. So- Mr. Levin, the IPI notes direct trial courts to a number of different provisions relevant to defining legal authority. And specifically, one of them is Article 7 in Chapter 720. Under Article 7, self-defense is 5-7-1, use of force in defense of a person. Doesn't the defendant act with legal authority if his conduct falls under 5-7-1? And therefore, isn't the instruction as given on number 23, with respect to the unlawful restraint, wouldn't that have been correct, given what the notes in IPI say and direct us to? I think the notes in IPI say the non-justified use of force instruction is to be given. I don't think, and the state can answer this when they have their own argument, I don't think they seriously dispute the fact that error was committed here. Because the error of the prejudice is that IPI has a very well-developed way of doing things here, and the committee notes and the instructions provide that the non-justified use of force should be used when, you know, self-defense is structured. We're going beyond the fact that there, let's assume there was error, but we're looking at, let's say, the second prong of plain error, whether there was a serious risk. So my question is focused on, given the fact that the trial courts or the notes direct us or the trial courts to various provisions, which seem to say that without legal authority perhaps is the equivalent of not justified in use of force. So given that, how is there a serious risk? Well, the without legal authority, as the committee notes, state referred to matters other than self-defense. They refer to private person, and they refer, you know, if a private person uses force, and they refer to merchants, merchants using force. And it also says that if it's an issue of fact in the case, then legal authority should be defined. So none of that was done here. We don't have a private person defense. We don't have the merchant defense. And we don't have either the parties or the court trying to define what without legal authority is. So it doesn't fit. It's not applicable to self-defense, the not justified in using force. And I'm not aware of any case that the court has come down with that said it's OK for a court to not use the not justified use of force. I don't think there's any case that actually holds that. All the cases that I've cited found reversible error in the not justified in using force instruction was not given when the instruction was called for. Because in this case, another reason why there's prejudicial error is the defendant received acquittal on many of the charges. And another reason for prejudice here is because the evidence was closely balanced. Mr. Giannis got up on the witness stand and said that he basically admitted the offense, except he raised his self-defense, affirmative defense. And the state did not come back and call any witnesses to rip up what Mr. Giannis stated. So there's closely balanced evidence right there. And that's prejudicial. So there are a lot of reasons, as I'm discussing now and in the brief, why not only is there error here, but there's prejudicial error. So under the second prong of the plaintiff rule, it's a serious risk that the jury convicted him because they didn't understand the applicable law. There's certainly a serious risk when you have not justified use of force in all the issue instructions, except on the lawful restraint. And there is a serious risk and threat that the fairness of the trial is on their mind. So that's what we're looking for is, does the defendant receive a fair trial? And there's also first prong plain error, too, because there's closely balanced evidence on this case. I mean, the evidence, when there's a credibility contest between the defendant and the complainant, and that would present a situation where the evidence is closely balanced. And as I just stated, the state did not call on witnesses to rebut Mr. Giannis' testimony on the witness stand. Well, hadn't the victim's testimony, in essence, already rebutted that? I mean, it was just he said, she said, right, plus a third party. No, I really think that what the state was doing was they were trying to establish the basic elements of the offense that goes on the lawful restraint. But what I'm arguing is something different is that what Mr. Giannis did is he raised a self-defense affirmative defense. And at that point, if the state wanted to rebut that, they could have come forward with a witness. Now, I'm not saying a witness in rebuttal. I'm not saying, I'm not raising a reasonable doubt around here. What I'm saying is that the evidence is closely balanced, especially in light of the fact that the defendant put the whole foundation of the case, basically, on self-defense, made the first statement in closing arguments. The defense counsel referred to unlawful restraint, referred to self-defense. They said, he said, the defense counsel said, Mr. Giannis, quote, Mr. Giannis was justified in using force to restrain the complaint. Well, who are they going to put on in rebuttal? They had already put on the victim. You don't put on the victim again just to re-testify to what happened. So who are they going to call? Well, to say- There were two people there. Well, to say that Ms. Smith could have stated in rebuttal, I did not use any force against Mr. Giannis. I mean, that's a potential source of rebuttal testimony. Mr. Giannis says that Brenda Smith hit him on the forehead where he had suffered scars from a beating incident that he had. And the state could have called Ms. Smith to say, yes, I'm aware of the scars that he had, but I didn't hit him on the scars. But that kind of testimony is not forthcoming. Nothing like that. So Brenda Smith did not rebut the self-defense defects. But she told her story, and I don't see the purpose of going back to testify about what she didn't do. She testified to what happened to her and what she did in response thereto. So why, and we'll stop here so you don't waste your time, but I don't understand what type of rebuttal testimony you're looking for. Well, just one quick statement to that, because Mr. Giannis emphasized the point that he had scars on his forehead from previously being there. And Ms. Smith said, could have said, and she didn't say this in direct, I never beat him on the scars, you know, I never hit him there. But she didn't get up to testify. So all I'm saying is that's one component out of many that shows that the evidence is closely based to afford prejudice. I guess she's not going to testify she didn't hit him on the scars when her basic premise was I didn't hit him. I was trying to defend myself. Well. So, you know, you're putting her in a difficult position. But you might, you want to go on with your next point because I heard the buzzer. Okay. Well, I'd just like to wrap it up then and say that under both issues one and two, the standard under issue one is a serious risk of grave error that the jury did not understand the instructions. I think that lower standard has been satisfied under an effective assistance of counsel. There's a reasonable probability, which means in one case, they said it could be a substantially less than 50% chance that the defendant would have been acquitted. I think the chances would have been greater than 50%. But the defendant's only requirement is to satisfy a low standard of less than 50%, a reasonable probability. So unless the court has any further questions, I have nothing further at this time. Thank you. You'll have an opportunity for rebuttal. Thank you so much. Mr. Rogers. Good morning, Your Honor, assembly, counsel, may it please the court. My name is Steven Rogers and I represent the people of the state of Illinois. Your Honor, the two main points the state has primarily go to prejudice. And that is that the jury still had to find that the defendant acted without legal authority when he detained the victim. And in multiple cases, two I cited were people versus Tamayo and people versus Hubble, where the courts equated that language with the lack of an affirmative defense. And the other really highly factual to this case is that the jury convicted on two counts that really were the essence of the unlawful restraint. Regardless of what the jury found when they were standing, because he was acquitted of striking the victim and pushing her down. Regardless of what the jury thought of that, there was conflicting testimony. The jury found that he was not justified in climbing on top of the victim and placing his hands near her neck. And so with those two rejections, or to the contrary, finding that the state had proven beyond a reasonable doubt that the defendant was not justified in those actions. There's no either reasonable probability or serious risk that the jury convicted the defendant of unlawful restraint where had that self-defense proposition been given, it would have come out to the contrary. Is there a point in time, in the state's mind, where if there was a pushing and shoving match, the issue of self-defense ended? Or is the state's basic position this was not a self-defense case at all? I think certainly in arguments, the state never thought this was a real self-defense case. He weighs 270 pounds and you really read through his testimony, it's pretty brazen. If I really wanted to hit her, I could have knocked her out, I'm a big boy and all this stuff. But he testified that she was pushing him despite the fact that the whole impetus to the argument is that he sees messages on her phone from a prior boyfriend. And he's upset because they thought they were exclusive at this point. But regardless, the jury may have just found a conflict in testimony. And because her testimony is that she gets knocked in the head and then kind of goes down. And she's not sure how she landed, it happened so fast. Maybe the jury acquitted just because there was some doubt in how that occurred. But once she's down on the ground, or on the mattress, there's really no self-defense at that point to climb on top of her. And his whole testimony was that he was trying to calm her down and keep her from hitting him. So you would think that placing your hands, which the trial judge described what the defendant was doing was placing his hands around the collarbone area, the neck, that you're gonna keep someone from hitting you with that hold. And then the roommate comes in and he's laying on her. She apparently loses consciousness at some point. And the defendant's testimony later is that he thought maybe this would turn into sexual relations because that had happened in the past, which in itself rebuts any claim that he needed to hold her down like that in self-defense. What about Mr. Levin's argument that they should have called her then to testify, actually to rebut the defendant's version of the story? Your Honor, it's possible, but she had already testified, I believe, the same day. Just a one-day trial. She's walking behind the bed and he hits her from behind and knocks her down. I think at best she would just say, yeah, what I said earlier really happened. But I don't think the state needed to because she completely described the event in question. And you don't think that's required, obviously? None. I don't think it made the evidence closely balanced because we have to remember really what was disputed is what happened when they were standing up. Well, he's acquitted of striking the victim and knocking her down. So if anything was closely balanced, it would have been that part, where there really was a dispute. But no one's disputing what happened when he climbs on top of her, places his hands around her neck, and then doesn't get off of her until the roommate comes in and starts screaming at him. At that point, she had lost consciousness for a brief period. And if she did hit him on the scar, that would have been in the initial stages when they went into the bedroom. Exactly, Your Honor. So if anything was closely balanced about self-defense, it would have been the first two counts of domestic battery. And he was found not guilty. Exactly, Your Honor. So, and that was my closely balanced argument, is that when we're looking at a multiple restraint, nothing about that evidence was closely balanced. He's a 270-pound man putting his entire force onto her neck area. And she's 160 pounds. And so there's, I mean, that's not justified. And that evidence was not close. Now, I understand that you didn't try this case. But the question remains, why, I mean, why wasn't, or why couldn't the proper IPI been offered in this case? Was it a mistake? Well, it was. The state did bring the instruction, and actually defense counsel. Then the state says, well, without legal authority language, it's duplicative of that separate proposition of self-defense. And the defense says, yeah, that's why I didn't include the separate self-defense proposition in that instruction. So what the trial court accepted was the defense's instruction. I don't know, you know, the state, I guess, could have more forcefully argued that this is the correct approach. But I do think that when you look at the IPIs, the first direction is, if legal authority is an issue of fact, you go to numerous provisions. And I think, I take defensive point that there is more. But I think that cuts in favor of the state that without legal authority encompasses any authority the law would give the defendant to act in that way. Where self-defense is more limited. But I couldn't find a case where the state not pushing for an instruction that the defense agreed to. And the state offered the initial instructions? Yes, ma'am. The domestic violence or the battery? Yeah, the state agreed to self-defense and put it in every single other instruction. In all the domestic batteries, you don't have any language without legal authority or without legal justification. But that language is included in lawful restraint. Wouldn't the jury have wondered why it was in some and not that particular one? And therefore, as Mr. Levin said, wouldn't then there have been certainly a risk that they would have been confused and convicted him when they should not have? Your Honor, the jury may have looked at it because all other instructions had a separate proposition. And so in this, in the unlawful restraint instruction, it was not there. However, there was the without legal authority language. And I think what Husted says is even if an instruction isn't perfect, defense counsel's argument can to some extent ameliorate that. And defense counsel did say all of these instructions, definition and issue instructions, are going to include language without legal authority, without lawful justification. And what that means is the state has the burden beyond a reasonable doubt to prove that the defendant was not justified in the use of force. And there's some potential, but I do think defense would have a stronger argument had the jury acquitted on everything except on lawful restraint. Because some of them are so similar that if he was justified in climbing on top of her and he was justified in placing his hands near her neck, at that point I don't know what else could have differentiated the unlawful restraint. But the jury rejected the self-defense as it related to those two domestic. So even if the jury had a question, they had already rejected the self-defense argument on those two counts. So I don't think there's a serious risk, even if it's a possibility, that they would have looked at that and had a question. And then the fact that they, it had to be just a mistake because when the jury brings the verdicts back the first time without the unlawful restraint, they send them back at six minutes later. I mean, that's almost the amount of time they probably could pass it around the room to sign. We forgot that that was, you know, it was stuck to the back of the page or something. So I don't think the jury went back with any serious question. And there were getting notes sent about that instruction. Exactly, Your Honor. The jury sent one note and that was about intentionally, as it related to the aggravated battery. And I think it's clear that they didn't buy the justification for aggravated battery either. They had a question about the knowledge, whether he was, his conscious objective was to strangle the victim. So if there are no other questions, the State respectfully requests that this Court affirm the defendant's conviction. Thank you, Mr. Rackers. Mr. Ladd? Yes, Your Honor. Your Honor, I would respectfully submit that there was an important point that the State did not address. And we were talking about which of the other offenses Mr. Giannis was convicted of or acquitted of. Mr. Giannis was acquitted of aggravated domestic battery. And I did address that in the reply brief. And aggravated domestic battery involves intentionally strangling. So the jury acquitted Mr. Giannis of that defense. So that offense could be argued as closely aligned with the unlawful restraint. So therefore, there is a very serious risk of prejudice here under Issues 1 and 2. But what about the two charges he was found guilty of other than unlawful restraint? They both reflect similar actions with the on top of and the hand somewhere in the neck or shoulder blade area. But aggravated domestic battery also involves that as well. So they are substantially similar. And Mr. Giannis was acquitted of that offense. So there is that serious risk present in this case because of the fact that he was acquitted of aggravated domestic battery. Because that involves strangling, putting your hands on the victim's neck. So I think that's more determinative than the fact that he was found guilty of the other offenses. Because we're dealing with a low bar here. We're dealing with a requirement that doesn't impose an obligation to prove beyond a shadow of a doubt. We have an obligation. Well, there's no that proves beyond a shadow of a doubt. It's beyond a reasonable doubt. Beyond a reasonable doubt. So I apologize for the speaking. Don't create a new standard. But the case law that I've addressed, the Illinois Supreme Court, made a very important distinction between serious risk and actually proving. And I think the fact that the state did not address the issue of the fact that Mr. Giannis was acquitted of aggravated domestic battery. That does involve putting your hands on the neck or throat area. So it is substantially similar to unlawful restraint. Couldn't they easily have found, though, that while he wasn't actually trying to strangle her, he was trying to hold her down? I mean, that's a very logical conclusion that the jury could have reached, right? That's consistent with those other two domestic battery counts. Well, we don't know. We only have what's based on the record to prove a serious risk of error. But I would say that the fact that he was acquitted of so many of the charges, the fact that we have aggravated domestic battery, it could be viewed in a number of ways. But, you know, one way is the way that I have addressed the court. Because the statute does say, and you use the word intentional, strangling, so it doesn't involve putting your hands on the neck or throat area. But it says intentionally strangled. Yeah. And as Justice Pence has just asked, isn't it also reasonable that they didn't think that he was trying to strangle her, but for whatever reason that's where he tried to restrain her? So that's where he tried to restrain her. The actual issue is, you know, if the complainant had hit him on the scars of his forehead and he reacted in a way to try to restrain her, then the self-defense is a justifiable defense. And the defense made it basically the linchpin of its argument. With the evidence it presented, the closing argument, the opening statement, the first statement from the defense counsel, as I stated, was brought out to not justify using force and referred specifically to unlawful restraint. So when the defendant argues so hard on a theory of the case and doesn't present an instruction on it, that's quite prejudicial. And the IPI does not equate with outlawed legal authority to self-defense. They're different concepts. Without legal authority involves private... If this involved a without legal authority case, the parties would have asked an instruction so the jury could deal with the issue of fact as the IPI instructs. And without legal authority would be a situation where you have a private person or a merchant kind of situation, which we don't have here. Does the jury know that particular distinction? Is there any reason to believe the jury knows that particular distinction? Well, the jury understood... You know, I get back again to the defendant counsel presenting arguments and presenting evidence. The jury understands and knows about that. The jury knows that they don't have a justified use of force in the unlawful strength offense. They had it in the aggravated domestic battery and they acquitted him so the jury knows of that. The jury did not return a verdict immediately on the unlawful strength so we have that. We have the closely balanced evidence. The defendant raised his self-defense in the offense and the jury knows that the state didn't try to rebut that so there's a lot of reason. I mean, I could rely on one reason which would be sufficient but there are a lot of reasons for the jury to know a lot here which would call for the minimal prejudice standard that the defendant is required to establish here. So for those reasons, unless the court has any further questions, I have nothing further and I would thank the court. Thank you. Gentlemen, we appreciate your argument this morning. We will take the matter under advisement and we will stand in recess to prepare for our next case.